Thank you, Your Honor. May it please the Court, Charles Markley representing Stephen Arnot, the plaintiff in this particular case. We submit to the Court that the only issue that is in front of the Court today is the standing of the plaintiff. That is, does the plaintiff, the bankruptcy trustee, have standing to bring this case? In this case, the debtor originally filed a Chapter 7 petition in bankruptcy, filled out the forms, which include a Statement of Financial Affairs, which we call a SOFA, and also the Schedule of Assets and a Schedule of Liabilities. In these papers, the foreclosure of these, a pre-petition foreclosure of the SOFA. It was not listed, importantly, it was not listed in the Schedules as a claim or otherwise. It was only a passing reference in the SOFA where it was. The case was then administered. Nothing was done by the trustee about any claim on account of the foreclosure. Nothing. And the case was closed. So the question today comes down to, if the foreclosure was indeed wrongful, does a reopening of the estate, an appointment of a trustee, does that give that particular claim for wrongful foreclosure over to the new trustee? Or, was the claim abandoned? We have to look at the statute to make the determination of that, and that hinges on whether or not the debtor's claim was properly scheduled. Under the Bankruptcy Code, Section 554C, any property that is scheduled and not administered by the trustee is deemed abandoned. The statute uses the word scheduled. It doesn't use the word statement. And we have to distinguish, I think, carefully between schedule and statement. Congress could have said, any property in the schedules or in the statement is abandoned. That's not what they said. We have to presume that Congress knows the difference. The debtor is required to schedule all assets, including claims. And that's Section 521A1. They have to schedule them. So the Court thought that the language was sufficiently ambiguous that it could look at some equitable factors. So why don't you address what was wrong with the Court's, the reasons the Court gave for determining that the claim had been sufficiently identified by being listed on the sofa? Your Honor, I'm not catching all of this. I said, can you hear me now? Yes, that's better. That the district court thought the language was sufficiently ambiguous that it could look at a number of equitable and common-sense factors to say that the cause of action had been sufficiently identified even on the sofa, even if it didn't appear on the schedule. So can you address the district court's reasoning and the reasons it gave for saying that it was sufficient and why those are mistaken? For one, it said that the cross-reference is to all of A1, not to A1, I guess it would be B, little i and little 2i. And so had Congress actually wanted to limit it to what appeared on those schedules, it would have given a more specific reference. Well, the Congress did not say any property listed or identified on the schedules in A1, B, little i and little 2i. It said any property scheduled, which is not a defined term and which does not appear in fact in A1. The word scheduled could, as the district court indicated, be commonly used to include listed or referenced or other word of that sort. All right. I understand you're dividing your time. Okay, please watch the clock. And then apply directly to their cases. Could you stop for one second? What's happening, Mr. Johnson? Let me go to right what bothers me, which is, even if the language of the statute is ambiguous, Cusano makes it pretty clear that a cause of action has to be specifically identified. And there was no identification of a cause of action associated with the foreclosure on either the schedules or on the SOFA. Doesn't that control here? Cusano does not control in this case. There are a number of differences in Cusano. Number one, Cusano was a Chapter 11 case. Number two, in Cusano, the assets that were scheduled were scheduled on Schedule B, listing song rights or rights in musical copyrights that were disclosed and had a value that were assigned to them. The debtor in that case also paid to the estate what they claimed the value of those to be, made a plan that was confirmed that revested those assets back in the debtor after the plan was confirmed. The question in that case was, was the valuation of those assets so deceptive that it was not adequately disclosed? The Court found that despite the undervaluation, perhaps intentionally by the debtor, that they were still intentional, that there was adequate disclosure. It had nothing to do with the difference between the Schedule B of an asset and a statement of financial affairs. But it did say that the cause of action had to be, it wasn't in that. Let's see. Causes of actions are separate assets which must be formally listed. Simply listing the underlying asset out of which the cause of action arises is not sufficient. And so here, the foreclosure was listed on the statement of financial affairs, but nobody contemplated that there was a cause of action, so there was no separate asset of a cause of action that was listed anywhere. Well, I think the standard that talks about what the disclosure standard is, is the Chapman v. Waltman case that's cited in other materials. It talks about, it has to be enough information to bring into attention to a trustee so that the trustee has the opportunity to investigate any claim or action and that the listing was not so defective that it would forestall a proper investigation of the asset. And I think that was referring back to the Cassano case. So as long as that's out there and the trustee has the opportunity to see that there's an asset, it's there. The trustee has a 341 hearing where he can ask the debtor questions. He can request additional information from the debtor. He has the right to go out and conduct a separate investigation. He has the right to request that the debtor provide the documents that were done with the foreclosure. It's not as if in these cases that the debtor was attempting to hide an asset. In all of the other cases that are cited for the proposition that disclosure was inadequate on the Statement of Financial Affairs is that the debtor was attempting to game the system. They were trying to hide something by giving a vague reference and then wanting the trustee to abandon that asset so that the debtor could then come back in and take it. That's exactly what happened in the... Is there something in the statute that suggests that there's no, that there is abandonment unless there's some bad mens rea? It seems pretty, without looking at Santer, it just seems to be mechanical. I think that the 521A1 is clear that it says that it requires the debtors to file their schedule of assets, their current income and liabilities and Statement of Financial Affairs. 554C says any assets not otherwise administered under 521A1 are abandoned when the case is closed. So if Congress had only meant to say only assets that are scheduled on a particular schedule are abandoned, it wouldn't have referenced all of 521A1. Because it referenced 521A1 and not specific subsections, the presumption is that Congress intended all of those documents to be included. Now this question of the word scheduled, and notice in the statute that it's a small s. It's not a defined term. But in context of what the Bankruptcy Code is talking about, is that the debtor has an obligation to disclose their information. And when the debtor does that and the trustee has the opportunity to have a meaningful review of that, and the case is closed, all of those assets are abandoned. If that weren't the case, there are two things that could happen. Number one is you have information that's on the Statement of Financial Affairs that is entirely meaningless. A debtor hypothetically could put all of their information in the Statement of Financial Affairs, never on a particular box in a schedule, and under the trustee's argument, no matter how much disclosure is made in the SOFA, it is never abandoned because it wasn't put in a particular box. That's a form over substance argument and it's a hyper-technical argument that defeats the purpose of an efficient process for administering Chapter 7 cases and for the debtors to get their fresh start. It also lays traps for debtors' attorneys who may not think of particular causes of action related to an event. So for instance, when we have a car that's repossessed or a foreclosure, a debtor's attorney isn't necessarily going to know to list trespass claims, wrongful foreclosure, wrongful repossession. There could be any number of cases that types of causes of action, legal theories that are out there. And under the trustee's reading of the statute, is a debtor's attorney or the debtor are going to have to list every single potential cause of action that could ever be thought of in a case and put that somewhere on the Schedule B. But it doesn't really affect the debtor, right? It affects... I'm sorry? It doesn't affect the debtor because you've taken the position that the cause of action is meritless and so it doesn't really matter to the debtor that the trustee is pursuing a meritless cause of action. It doesn't really affect that balance of protection that's required. It does because we notice in this case is that we're now looking at five, seven, eight years after the case was closed, the bankruptcies were closed, debtors are being named in adversary proceedings in order for the trustee to try and recover assets and basically do an avoidance action to bring that house that belonged to the debtor or prior to the debtor filing bankruptcy back into the estate, which necessarily affects the debtor's fresh start because now they will be embroiled in litigation over something that they had no intent of doing. So what's the effect if this... I'm sorry, Your Honor. If you have a question, otherwise I would turn the time to my colleagues. That's fine. Thank you, Your Honors. My name is Mark Rosenberg. I'm here on behalf of David Weibel, who was the successor deed of trust trustee in the underlying foreclosure. And of course, we join in the arguments made by my colleague, Mr. Cleverly, here that the claims were abandoned under Section 554C when the bankruptcy was first closed. Opposing counsel had indicated that the only issue here is standing. Of course, that is incorrect because this court can affirm on any basis supported by the record, and Mr. Weibel set forth a number of... And that's whether or not the district court considered it. Mr. Weibel put forth a number of basis for dismissal against him, and there is evidence in the record to support that. We put that in our appellee's answering brief. The appellant did not respond to any of it, although he had 16 more pages he could have briefed, and didn't respond to any of it except to say that this court should ignore it. Well, that's not the case, and I just want to touch basis on a couple of things here because I don't have much time, but I would note that in the underlying bankruptcy case, in this case, the court issued a published opinion at 554BR241, and at page 247 of that published opinion, the court held that this was an avoidance action even though only state law claims were alleged because in order to get the relief on the state law claims, the court would have to void the underlying foreclosure. Therefore, call it law of the case if you will, but this is an avoidance action, and section 546A has a two-year statute of limitations. The bankruptcy closed in 2012. The lawsuit was not filed until 2016, many years past the statute of limitation date. I'd also note... Do you think that's your strongest argument on the merits? You had, I think you raised multiple arguments as to why the claim was not meritorious. Well, we have a number of arguments. The primary argument was argued by Mr. Cleverley. We're arguing that. We are also arguing, and I'm not going to argue all of them right now, but under Oregon Statute ORS86-767, there's two subsections under which dismissal of claims should be affirmed, and these two are specifically as to Mr. Weibel. Subsection 6, providing a five-year statute of limitation. Again, it was close to 6. Subsection 2, saying that the summary judgment should be granted unless there's clear and convincing evidence that the debtors could have paid, but no evidence was provided here. The one thing I'll say is that plaintiffs might argue that Mr. Weibel was not a proper successor trustee. That has never been judicially held by anyone, and it's too late to start alleging it now, and it's in the deed of trust. Thank you very much. I will turn it over to my colleague. May it please the Court. I'm Tara Schleicher. I represent U.S. Bank in the R0 v. Weibel matter. In our case, the first lien on the property was the subject of the foreclosure sale in 2010. LaSalle Bank was the second lien holder who bought the property at that foreclosure sale for consideration. It was $227,500. My client, U.S. Bank, is the successor in interest to LaSalle Bank and ultimately sold the property after holding it for a month to two individuals, Kennedy and Thanheiser, who originally were participants in or defendants in the action, but were dismissed as bona fide purchasers. And my client is uniquely situated relative to the other appellees because my client is also a bona fide purchaser. And as a bona fide purchaser, under Oregon law, the recital and the trustee's deed is conclusive as to my client. The statute is ORS 86.803, and that statute provides that the recitals and the trustee's deed are conclusive evidence in any court on the truth of the matters set forth therein as to bona fide purchasers. The recitals and the trustee's deed in this case, in the Weibel case, and that's at the supplemental excerpt of record, pages 242 to 247, they establish that the debtors defaulted, that the trustee provided the required statutory notices, that the property was sold to the highest bidder, but most importantly, it recites that the trustee was vested with the authority to sell the property by the laws of the state of Oregon. And that's conclusive as to U.S. Bank because they stepped into the shoes of LaSalle and LaSalle paid valuable consideration in good faith, behaving honestly and frankly without any intent to defraud or seek an unconscionable advantage, and there was nothing presented at the lower court level by the trustee to counter that. So there was no genuine issue of material fact that that was the case. With respect to your question about what we think the strongest argument is, I'm going to go out on a limb. I do think that the statute ran on the avoidance claims, and those claims are foundational for the trustee. He has to bring an avoidance claim in order to avoid the foreclosure sales in order to get to what his two remaining claims are, which are trespass and invalid encumbrance. Now, he originally had those foundational claims, but dropped them. They were in the form of a declaratory judgment, but he dropped them because of the bankruptcy court's opinion that those were avoidance claims and that he was beyond the statute of limitations. And then with respect to the court's question about this asset in particular, in the district court's conclusion in this case that the listing of the foreclosure was sufficient in the SOFA to effect abandonment, I think it's interesting to note that the district court noted that it's a very odd asset, and it is. It's an asset that may not really, he said, in any way, in any pragmatic way, have existed at the time that the first trustee looked at everything, but came to birth later because the values in this market rose so high that Mr. Arnett was incentivized to reopen old cases where foreclosure properties had appreciated value and realized on that. But the district court said, look, there was enough evidence here for the original trustee to look at that issue under the SOFA listing, and that's consistent with case law in which the courts have held that abandonment is irrevocable, even if it is subsequently discovered that the abandoned property has greater value than previously believed. If you have some rebuttal time. A quick tour to the Cusano case. The debtor properly scheduled post-petition song rights. That was in the schedules. But the court held that since you didn't specifically say pre-petition song rights, which means royalties, that that claim was not abandoned. And I think it's important here, we're not saying that the debtor did anything wrong. The debtor and his lawyer probably never knew about our claim in this particular case. We're not trying to say they're hiding anything. But if they don't list a claim in the schedules, it is simply not abandoned. So did the cause of action exist at the time of the bankruptcy? Yes. The cause of action was probably, I'd have to look back at the dates, but what's happened is that the Oregon Court of Appeals, in cases cited to this court, has said when MERS appoints the successor trustee, the resulting sale never occurred. It wasn't a sale done by a proper trustee. So the sale doesn't exist. That's what the Oregon Court of Appeals has said. Now, the question on the scheduling, if we look at 554C, it says any property scheduled under Section 521.1. And then we go back and we look at Section 521.1, and what does it say? It says the debtor is supposed to do a schedule of assets, a schedule of liabilities. Oh, and he's also supposed to do a statement of financial affairs. I don't see how that's ambiguous. I think it's just quite clear what it really happens to be. Now, counsel has brought up that this is really an avoidance action. This is not an avoidance action. An avoidance action under the Bankruptcy Code could be there. You could have an avoidance action. We haven't pleaded it. We don't claim it. The defendants don't have a right to our claims. Our claims are solely and strictly under Oregon State law, not under Bankruptcy Code at all. And if this was an avoidance action, which avoidance action? Would it be a preference? Well, no, that doesn't work. A fraudulent transfer? No, that doesn't work. What avoidance action is there out there? You can't just say avoidance. It has to be specifically into the section. I point out to the Court, there hasn't been any discovery in this particular case. My recollection is Judge Dunn and the Bankruptcy Court stayed discovery until we got all of the legal issues wound out. So when counsel brings up ORS 86.803 and says that their client is that the recitals are conclusive in their favor, they're not. If we read ORS 86.803, it's conclusive to a purchaser for value in good faith relying on them. There's nothing in the record that says in good faith they relied on them. They just don't have any of that in there. We have presented to the trial court defenses and reasons why all of their state claim defenses, not the avoidance issues, but not the scheduling issues, why we will prevail on all of those claims. For example, they bring up a district court decision out of the Eugene where the court, in case it wasn't appealed, said in respect to ORS 205.470, that's the invalid encumbrance statute that we're using. But there's an opinion from the district court judge that says that does not apply and benefit any private parties. It's only for governmental workers and employees to use that statute. Well, that might be what the district court said, but the court of appeals, Oregon Court of Appeals, in the Vukanovic v. Kine case, which I was on the successful side of that case, 251 ORAP 807, affirmed our claim for unlawful encumbrance totally involving private parties. So the district court's decision, I think, was just before the decision came out from the Oregon Court of Appeals. But the defendants never cite the court, cite this court, to the prevailing decision on an Oregon state law issue, cite the court to that. Your Honor, this case, as the district court decided, hinges on whether the claims were abandoned by the first trustee, but they would only be abandoned if they were properly scheduled. And that's what the statute says, and it's our submission to the court that we should be just simply following the literal words of the statute. Thank you. I thank both parties for their argument. In the case of ARNOT v. Service Link is submitted.
judges: Fernandez, Ikuta, Sessions